UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

DR. ABBEY A. AKINWUMI,

          Defendant.
_____/

Case No 22-mc-50234
Crim. No. 13-cr-20392

Nancy G. Edmunds
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO DENY ABBEY AKINWUMI'S "MOTION TO REINSTATE DEA CERTIFICATE AND REGISTRATION TAKEN FROM DEFENDANT BY FORCED VOLUNTARY WITHDRAWAL" (ECF No. 1)**

Although this miscellaneous action is captioned as if brought by the United States of America against Abbey Akinwumi ("Akinwumi"), in reality, Akinwumi commenced the action on February 23, 2022, by filing a "Motion to Reinstate DEA Certificate and Registration Taken from Defendant [Akinwumi] by Forced Voluntary Withdrawal." (ECF No. 1) ("Motion to Reinstate"). In an underlying criminal case in this Court, Case No. 13-20392 ("Criminal Case"), Akinwumi, who was a licensed medical doctor, was charged with drug and health care fraud crimes. At a search of his home prior to him being charged, federal agents seized Akinwumi's DEA Certificate and Registration. Then, prior to pleading guilty to certain of the charges, Akinwumi executed DEA Form 104, entitled, "Voluntary Surrender of Controlled Substances Privileges," pursuant to which he voluntarily surrendered his DEA Certificate and Registration.

Having since served a custodial sentence and been released, Akinwumi now claims

1

he was unlawfully "forced" to sign DEA Form 104. Accordingly, he filed the instant Motion to Reinstate, asking the Court to order "the Government to return his DEA Certification and Registration." (ECF No. 1, PageID.21).[1] The United States filed a response and Akinwumi filed a reply. (ECF Nos. 3, 4). Additionally, although the United States could not locate the original DEA Form 104 signed by Akinwumi, it did, at the Court's direction, file a copy of the version of that Form that Akinwumi signed. (ECF No. 14-1, PageID.106).[2] Having reviewed the parties' briefs and other filings, the Court finds that a hearing will not aid it in resolving Akinwumi's motion, which, for the reasons discussed below, should be denied.

**Background**

*Criminal Charges*

Akinwumi was a licensed physician who owned and operated a medical clinic located in Detroit, Michigan. The Drug Enforcement Administration ("DEA") had issued DEA Registration Number BA5485897 (the "DEA Registration") to Akinwumi, which authorized him to prescribe certain controlled substances to his patients.

On May 23, 2013, a grand jury in the Eastern District of Michigan returned a 30-count Indictment against Akinwumi, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846

---

[1] The motion was referred to the undersigned for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). (ECF No. 2). However, because Akinwumi seeks injunctive relief, the Court proceeds by way of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(A).

[2] Akinwumi does not challenge that this is the version he signed.

and 841(a)(1) (Count I), Unlawful Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1) (Counts 2 through 14), and Health Care Fraud, in violation of 18 U.S.C. § 1347 (Counts 15 through 30).  (Criminal Case, ECF No. 1).  In short, the indictment alleged that Akinwumi filled prescriptions for controlled substances "not for the legitimate treatment of patients, but rather to obtain controlled substances that could be sold at substantial profit on the illegal street market." (*Id.*).  Millions of dollars' worth of illicit prescriptions were written, and Akinwumi billed Medicare more than $6 million related thereto.  (*Id.*).  He also allegedly billed Medicare more than $6.9 million for medically unnecessary "patient services."  (*Id.*).

### *Akinwumi's Pretrial Release Bond and Arraignment*

On June 4, 2013, Akinwumi, represented by counsel, made his initial appearance before United States Magistrate Judge Mona K. Majzoub.  He was released on a $50,000.00 unsecured bond, with a variety of conditions, one of which was that he was prohibited from prescribing controlled substances and/or billing Medicare.  (*Id.*, ECF No. 6, PageID.21).  Akinwumi's arraignment took place on June 5, 2013, and he entered a not guilty plea to each count of the indictment.

### *June 6, 2013 Conference Call Regarding Akinwumi's DEA Registration License and June 7, 2013 Meeting*

In his Motion to Reinstate, Akinwumi alleges that on June 6, 2013, his counsel spoke on the phone with FBI agent Peter Hayes ("Hayes"), and that Hayes "wanted Dr. Akinwumi to sign [DEA Form 104] to voluntarily withdraw his DEA Certification and Registration, 'so that he would never write control [sic] substances again.'" (ECF No. 1,

3

PageID.14).[3] The United States agrees it asked Akinwumi to sign DEA Form 104, entitled "Voluntary Surrender of Controlled Substances Privileges," but says it did so "because [Akinwumi] was ordered to refrain from prescribing as part of his bond conditions." (ECF No. 3, PageID.27).

Akinwumi contends that on June 7, 2013, "a representative from the DEA along with the public defender at the Legal aid and Defender office, forced [him] to sign [DEA Form 104] to voluntarily withdraw his DEA Certification and Registration." (ECF No. 1, PageID.15). In his motion, Akinwumi provided no details whatsoever as to how he was purportedly "forced" to sign Form 104, but, importantly, he notes that "[w]hen [he] objected[] to this invidious and unjust act, [his attorney] Mr Andrew Densemo told him not to object, otherwise he would be looking at a 20-year prison term." (*Id.*).

In his reply brief, Akinwumi provides additional details regarding his interaction with Hayes. He asserts that "[a]fter the phone conversation [between his counsel and Hayes], [he] was told to report to the public defender's office [] and bring along with him the samples of [the drug] Lyrica . . ." (ECF No. 4, PageID.37). Akinwumi contends that while in that office, Agent Hayes instructed him to flush the pills down the toilet, and that when he "was hesitant and reluctant to obey [Hayes], [his attorney] grabbed the samples of pills in the bottles swiftly from [him] and flushed them through the toilet in-order [sic] to satisfy [Hayes]." (*Id.*, PageID.38). Akinwumi further alleges, "[a]fter this, the [DEA

---

[3] Akinwumi admits that his DEA Certificate and Registration had already been seized by federal agents on June 3, 2013, when they executed a search warrant at his home and business office. (ECF No. 1, PageID.15).

4

Form 104] was presented to Dr. Akinwumi for signature." (*Id.*). It is undisputed that Akinwumi executed Form 104, which was then provided to the government. (ECF No. 3, PageID.28; Criminal Case, ECF No. 13, PageID.40 ("Dr. Akinwumi has signed a voluntary surrender of controlled substances privileges due to the confiscation of his DEA certification.")).

Importantly, the DEA Form 104 signed by Akinwumi repeatedly makes clear the voluntary nature of the registrant's execution. The Form's title begins, "Voluntary Surrender," and its very first line reads, "[w]ith the understanding that I am not required to surrender my controlled substances privileges, I freely and under no duress, implied or express, execute this document and choose to take the actions described herein." (ECF No. 14-1, PageID.106). The Form includes other similar verbiage, such as, "I hereby voluntarily surrender my Drug Enforcement Administration Certificate of Registration . . . as evidence of my intent to relinquish my privilege to handle controlled substances . . . ." (*Id.*). The Form also makes clear that the once signed and delivered to "any employee of DEA," the termination of the registration is automatic and "immediate." (*Id.*) ("I understand that submission of this document to DEA, including any employee of DEA, shall result in the immediate termination of my registration . . .").

Consequently, Akinwumi's DEA Registration was terminated immediately upon its submission to the DEA.

### *Guilty Plea, Sentence, and Eventual Release from Custody*

On November 5, 2015, Akinwumi, represented by counsel, entered into a written Rule 11 Plea Agreement, agreeing to plead guilty to Counts 1 and 15 of the indictment,

with the other Counts being dismissed.  (Criminal Case, ECF No. 50).  On January 31, 2016, Michigan's Department of Licensing and Regulatory Affairs ("LARA") revoked Akinwumi's medical license, which revocation remains in effect to this date.[4]

On February 29, 2016, the Honorable Nancy G. Edmunds sentenced Akinwumi to a term of 84 months' imprisonment.  Akinwumi did not appeal his sentence, which he began serving on May 18, 2016.  (Criminal Case, ECF No. 64).  It appears Akinwumi was released to home confinement sometime in late 2020 or early 2021.[5]

### *Akinwumi's Motion to Reinstate*

On February 23, 2022, Akinwumi filed the instant Motion to Reinstate in which he asks the Court to order "the Government to return his DEA Certification and Registration." (ECF No. 1, PageID.21).  In short, Akinwumi argues that DEA Agent Hayes improperly "forced" and "coerced" him into signing Form 104 by "threaten[ing] [] a jail term of 20 years if he was heedless."  (ECF No. 1; ECF No. 4, PageID.38).  Akinwumi asserts that Agent Hayes' alleged conduct violated the Fourth Amendment's protection against unreasonable searches and seizures.  (ECF No. 1, PageID.18-19).  He also relies on Federal Rule of Criminal Procedure 41(g), which provides, "[a] person aggrieved by an unlawful

---

[4] https://aca-prod.accela.com/MILARA/GeneralProperty/LicenseeDetail.aspx?LicenseeNumber=4301071164&LicenseeType=Medical+Doctor.  (last visited April 22, 2023).

[5] The parties dispute whether Akinwumi was released from prison prior to the completion of is 84-month sentence.  (compare ECF No. 3, PageID.28-29 ("On May 3, 2021, the defendant was released to home confinement under the CARES Act to mitigate the spread of COVID-19 throughout the federal prison system . . .") with ECF No. 4, PageID.40 ("Dr. Akinwumi was released on November 3, 2020, NOT under the CARES ACT, [but] because he had already completed his term.")).  The dispute is immaterial to the resolution of Akinwumi's instant motion, and the Court will not address it further.

search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g).

In its response, the United States is silent as to Akinwumi's request for the physical "return" of his DEA Registration and Certificate, and argues, without providing any citation, that this Court lacks jurisdiction to "reinstate [Akinwumi's] DEA registration" because "only [the] DEA has the authority to reinstate [his] DEA registration." (ECF No. 3, PageID.29). Then, the United States goes on to argue a different point:

> The Controlled Substance Act provides that every person who dispenses, or who proposes to dispense, any controlled substance shall obtain from the DEA a registration issued in accordance with DEA rules and regulations. *See* 21 U.S.C. 822(a)(2). DEA may only register a person to dispense a controlled substance if that person is permitted to do so by the jurisdiction in which he or she practices. *See Id.* 802(21), 823(f).
>
> Here, [Akinwumi] must first reinstate his medical and controlled substances licenses with the State of Michigan, then he can submit an application to DEA to reinstate his DEA registration.

(*Id.*).

In his reply brief, Akinwumi asserts that the United States is wrong, and that "[o]ne must have an active DEA license in-order [sic] to be approved for controlled substance license in the state of Michigan." (ECF No. 4, PageID.40).

For the reasons discussed below, the Court agrees that Akinwumi's Motion to Reinstate should be denied, albeit for reasons other than those urged by the United States.

**Applicable Standards**

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. Fed. R. Crim. P. 41 pertains to "Search and Seizure," and provides

7

that "[a] warrant may be issued for any of the following: . . . (3) property designed for use, intended for use, or used in committing a crime . . ." Fed. R. Crim. P. 41(c)(3). Rule 41(g) provides, "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. . . . The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings." Fed. R. Crim. P. 41(g).

**Discussion**

*Unlawful Seizure Claim*

Akinwumi's assertion that the DEA's refusal to return his DEA Certificate and Registration amounts to an "unlawful seizure" in violation of the Fourth Amendment lacks merit. The specific events Akinwumi complains about – those resulting in his execution of DEA Form 104 – are simply not a "seizure" under the Fourth Amendment. Akinwumi admits that agents physically seized his DEA Certificate and Registration when they executed the search warrant at his home and office prior to his being indicted. (ECF No. 1, PageID.15). Akinwumi does not challenge the legality[6] of that act, which was the actual "seizure" of the "property" – the Certificate and Registration – he now wants returned, and the DEA's subsequent refusal to return that property is not a an actionable "seizure." *See Fox v. Van Oosterum*, 176 F.3d 342, 350 (6th Cir. 1999) ("the seizure in this case, a seizure

---

[6] Indeed, under Fed. R. Crim. P. 41(c)(3), the seizure of Akinwumi's DEA Certificate and Registration was clearly lawful as they were "used in committing a crime . . ." – the licenses he utilized to prescribe the unlawful controlled substance prescriptions.

8

of [a driver's license] pursuant to an unchallenged inventory search that occurred over four months prior to the refusal to return the property, ended well before [defendant officers] refused to return [plaintiff's] license. . . . The refusal to return the license here neither brought about an additional seizure nor changed the character of the [actual physical] seizure from a reasonable one to an unreasonable one because the seizure was already complete when the defendants refused to return the license."). This is because "the Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property." *Id.*, at 351. With no unlawful "seizure," there is no basis under the Fourth Amendment for ordering the DEA to "return" Akinwumi's Certificate and Registration. Similarly, no basis exists to order such a return under Fed. R. Crim. P. 41(g), which provides for the return of property only to a person aggrieved "by an unlawful search and seizure of property . . ."

### *Fifth Amendment Due Process Argument*

While Akinwumi frames his Motion to Reinstate as seeking to vindicate an "unlawful seizure," arguably he is actually asserting a claim that his due process rights under the Fifth Amendment to the United States Constitution were violated when Agent Hayes allegedly coerced him into signing DEA Form 104. Any such argument also fails.

The Fifth Amendment's Due Process Clause provides, in relevant part, that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause generally requires that an individual "must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993).

9

A property interest that would invoke due process rights exists where there is a "legitimate claim of entitlement," *see Crosby v. Univ. of Kentucky*, 863 F.3d 545, 552 (6th Cir. 2017), and at least for the purposes of this Report and Recommendation, the Court will assume Akinwumi had a property interest in his DEA Certificate and Registration. *See Page v. Bruce*, No. 1:02CV141DAK, 2004 WL 724477, at *4 (D. Utah Feb. 2, 2004) ("Physicians have a property interest in their DEA registrations."); *Rizvi v. Kovach*, No. CV 20-3269, 2021 WL 3630476, at *3 (E.D. Pa. Aug. 16, 2021) ("the DEA itself has recognized that a property interest inheres in a DEA certificate of registration.") (citing *Barry M. Schultz, M.D.*, Decision and Order, 76 Fed. Reg. 78,695, 78,696 (Dec. 19, 2011) ("The Respondent has a constitutionally protected property interest in his DEA registration.")). The Supreme Court has also noted that "[o]nce licenses are issued ... their continued possession may become essential in the pursuit of a livelihood." *Bell v. Burson*, 402 U.S. 535, 539 (1971).

Any due process claim by Akinwumi lacks merit because his own allegations make clear that he was adequately apprised of his rights attendant to the DEA Form 104 and the consequences of his signing it, and show that the circumstances surrounding his execution of the Form were not unduly coercive.[7]

The DEA Form 104 that Akinwumi signed clearly advised him of his various rights at the time, as well as the consequences of his execution of the document. That single-

---

[7] The Court notes that Akinwumi does not allege that, at the time he was presented the DEA Form 104, the DEA had commenced an administrative hearing to formally revoke his DEA Certificate and Registration.

10

page Form is entitled, "Voluntary Surrender of Controlled Substances Privileges," and its very first line reads, "[w]ith the understanding that *I am not required to surrender my controlled substances privileges*, *I freely and under no duress, implied or express*, execute this document *and choose to take the actions described* **herein**." (ECF No. 14-1, PageID.106) (emphasis added). The Form includes other similar verbiage, such as, "I hereby *voluntarily surrender* my Drug Enforcement Administration Certificate of Registration . . . as evidence of *my intent to relinquish my privilege* to handle controlled substances . . ." (*Id.*) (emphasis added). It also notes that by signing the Form, Akinwumi was recognizing that he would "not [be] authorized to order, manufacture, distribute, possess, dispense, administer, prescribe, or engage in any other controlled substance activities whatsoever . . ." (*Id.*). Importantly, DEA Form 104 also makes clear that the mere "submission of this document to DEA, including any employee of DEA, shall result in the immediate termination of my registration . . ." (*Id.*).[8] The fact that Akinwumi now

---

[8] This provision in DEA Form 104 is entirely consistent with the applicable statutes. Indeed, 21 U.S.C. § 1301.52 provides:

> . . . the registration of any person . . . shall terminate, ***without any further action by the Administration***, if and when such person dies, ceases legal existence, discontinues business or professional practice, ***or surrenders a registration***. . . . In the case of a surrender, termination shall occur upon receipt by any employee of the Administration of a duly executed DEA form 104 or any signed writing indicating the desire to surrender a registration.

21 U.S.C. § 1301.52(a) (emphasis added). *Cf. Page v. Bruce*, No. 1:02CV141DAK, 2004 WL 724477, at *6 (D. Utah Feb. 2, 2004) (finding that physician "had the ability to retract any consent he may have given in the [Form 104]" because, (1) unlike the Form Akinwumi signed which automatically and "immediate[ly]" terminated Akinwumi's privileges, the one in *Page* merely authorized the DEA later take subsequent action "to terminate and revoke" a registration, and (2) unlike the current law under 21 U.S.C. § 1301.52, the law at that time did "not recognize a

finds these consequences to "have a gargantuan and colossal effect on [his] ability [] to practice Medicine and make a living" does not change the fact that he was fully apprised of those consequences before executing DEA Form 104. (ECF No. 4, PageID.36).

Akinwumi's own allegations also demonstrate that he was not unduly coerced into signing the DEA Form 104. First, Akinwumi admits that he knew a day ahead of time that DEA Agent Hayes was asking him to execute Form 104 to voluntarily surrender his license. Akinwumi also admits knowing that the purpose of obtaining his signature to "voluntarily withdraw his DEA Certification and registration" was "so that he would never write controlled substances again." (ECF No. 1, PageID.16). Thus, Akinwumi had ample opportunity to discuss that serious matter with his attorney before even meeting with Agent Hayes, let alone before signing the Form. Second, Akinwumi voluntarily appeared at his attorney's office to sign the Form, and never alleges he was held there against his will. (*Id.*, PageID.15). Finally, Akinwumi admits that not only did Agent Hayes present DEA Form 104 while he was there in the presence of his attorney, but that his attorney also advised him "not to object" to signing the Form because "otherwise he would be looking at a 20-year prison term." (ECF No. 4, PageID.34). Sharing that advice cannot be considered unduly coercive because, as Akinwumi had previously acknowledged, without

---

surrender as a means of terminating one's DEA privileges."). Indeed, *Page* even recognized, "[t]he DEA is fully capable of crafting a process for self surrender under its regulations," but simply had not done so at that time of the events in that case in 2002.

a plea agreement, he was facing "[u]p to 20 years imprisonment" on each of the fourteen controlled substances offenses for which he was charged. (Criminal Case, ECF No. 9).[9]

In sum, since Akinwumi was adequately advised of the consequences of signing DEA Form 104 and alleges no facts from which the Court could find that he was unduly coerced into signing that Form, his due process claim fails.

**Conclusion**

For all the reasons stated above, **IT IS RECOMMENDED** that Akinwumi's Motion to Reinstate **(ECF No. 1)** be **DENIED**.

Dated: April 24, 2023  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some

---

[9] His counsel's advice appears sound, because Akinwumi received a total sentence of 84 months in prison. (ECF No. 63).

objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2). A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 24, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager